1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tami E. Henry, | CV 11-01773-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Universal Technical Institute; Kimberly McWaters; Mike White; Adrian Cordova; Mike Romano; Ken Golaszewski; Maria Walters; Harvey Davis; Heather Gonzales; Bernie Candeleria; Markia Baker; Karen Mourad; Kathy Bochenski; Tom Riggs, | |
| Defendants. | |

The court has before it Universal Technical Institute ("UTI"), McWaters, Riggs, Cordova, Romano, Walters, Gonzales, Candeleria, Baker, Mourad, and Bochenski's ("defendants") motion to dismiss (doc. 92), plaintiff's response (doc. 93), and defendants' reply (doc. 94).

**I**

UTI is an educational institution that provides technical instruction for students seeking careers as mechanics. Plaintiff is a 52 year old Native American and Japanese man. He began attending the automotive program at UTI's Houston campus with his son. Plaintiff and his son transferred to the Avondale, Arizona campus in June 2010.

During his time at UTI, plaintiff alleges that he endured assaults by students and

1  offensive comments by UTI staff. He claims that UTI instructors and administrators engaged
2  in a pattern of racial discrimination. In particular, plaintiff alleges that he took the Hot Rod
3  "bolt-on" class from Baker in 2010. On the first day of class, Baker learned that plaintiff was
4  from Japan. Throughout the three-week course, plaintiff alleges that Baker would make
5  offensive comments about the Japanese. For example, she stated that "[t]he 'Japs' couldn't
6  build a car until the American Auto Makers trained them," and that "[i]f the 'Japs' had an
7  original idea, their brains would explode." Compl. ¶ 24. On August 5, 2010, Baker decided
8  to administer a test on Induction Systems, that day's topic of instruction. Plaintiff and his son
9  disagreed with her decision to give the test that day, and left the room to appeal to Baker's
10 supervisors. Unsuccessful, they returned to the classroom to take the test. The test had not
11 started. Baker did not allow plaintiff and his son to take the test. Plaintiff alleges that he and
12 his son were not allowed to make-up the test, although white students (including one white
13 student who plaintiff alleges also left class early on August 5, 2010) were permitted to make-
14 up the test. Compl. ¶¶ 32, 44. On August 20, 2010, plaintiff received a zero score on the
15 Induction System test and a professionalism "downgrade" to 70%, which plaintiff alleges
16 "delivered a severe blow" to his 3.97 GPA. Compl. ¶ 46.

17 Plaintiff was expelled from UTI in October 2010. After plaintiff was expelled, UTI
18 repaid his student loans.

## II

20 The procedural history of this action is complicated (see doc. 51). Because most of
21 it is not relevant to this motion, we will not repeat it. Plaintiff filed this action on September
22 8, 2011. The operative pleading, plaintiff's most recent amended complaint, was filed in
23 March 2012 (doc. 69). In it, plaintiff asserts six causes of action against UTI and several of
24 its employees: (1) physical assault and retaliation; (2) retaliation and coercion; (3)
25 discrimination on the basis of race and national origin, retaliation; (4) pervasive racial
26 discrimination, harassment, retaliation; (5) harassment, coercion, intimidation, conspiracy
27 to interfere with civil rights, retaliatory expulsion, denial of due process, discrimination on
28 the basis of race and national origin, Family Educational Rights to Privacy Act ("FERPA")

violations; and (6) conspiracy to interfere with civil rights, denial of equal educational opportunity, discrimination on the basis of age, fraud, and conspiracy to commit fraud against the United States. Each count contains multiple allegations of statutory and constitutional violations.[1] Defendants move to dismiss the complaint in its entirety for failure to state a claim.

### III

Plaintiff repeatedly alleges that defendants denied him due process and equal protection under the laws in violation of the Fourteenth Amendment. But not all conduct, even if repugnant, is actionable under the Fourteenth Amendment. This is because the "United States Constitution protects individual rights only from <u>government</u> action, not from <u>private</u> action." Single Moms, Inc. v. Montana Power Co., 331 F.3d 743, 746 (9th Cir. 2003) (emphasis in original). Thus, "[defendant] cannot violate the plaintiffs' Fourteenth Amendment. . . rights unless the State [] is somehow responsible for" defendant's actions. Id. at 747. Here, plaintiff has not alleged that any of the defendants are state actors. He identifies UTI as "a corporation" and notes that he is suing the UTI employees "in their official capacity as educators for UTI." Compl. ¶¶ 1, 5.

Private action may be treated as state action "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295, 121 S. Ct. 924, 930 (2001) (citation omitted). For example, a private action may be state action when (1) the government compelled it through coercion or offered its significant encouragement; (2) the government willfully participated jointly with the private actor; (3) the government was in control of a "nominally private actor"; or (4) "the government delegated a 'public function.'" Single Moms, 331 F.3d at 747. Here, plaintiff has not alleged any facts suggesting that defendants' actions have a close nexus to

---

[1] For example, while count one is titled "physical assault and retaliation," it asks us to declare that defendants violated the Equal Protection Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, and 42 U.S.C. § 12203.

- 3 -

the government. In his response to the motion to dismiss, he merely repeats his argument that defendants denied him due process and equal protection. Because plaintiff has not alleged state action, he fails to state a Fourteenth Amendment claim.

## IV

Plaintiff alleges various violations of the Family Educational Rights and Privacy Act of 1974 ("FERPA"). FERPA prohibits a school from receiving federal funding if it has a policy or practice of disclosing student educational records without consent. 20 U.S.C. § 1232g(b)(1). There is no private right of action, however, to enforce FERPA violations. Gonzaga Univ. v. Doe, 536 U.S. 273, 290, 122 S. Ct. 2268, 2279 (2002); Sanchez v. Johnson, 416 F.3d 1051, 1055 n.2 (9th Cir. 2005) (same). Accordingly, plaintiff's FERPA claims are dismissed.

## V

Plaintiff also alleges age discrimination in violation of the Equal Educational Opportunities Act ("EEOA"), 20 U.S.C. § 1701 *et seq.*, and the Age Discrimination Act, 42 U.S.C. § 6102. The EEOA prohibits states from denying equal educational opportunities based on a student's race, sex, color, or national origin. 20 U.S.C. § 1703. Its purpose is to provide equal educational opportunities to "all children enrolled in public schools." Id. § 1701(a)(1). Plaintiff has not alleged that UTI is a public school. Moreover, plaintiff is 52 years old. He is not a child.

The Age Discrimination Act prohibits discrimination on the basis of age in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. An action cannot be brought under this Act, however, unless administrative remedies are exhausted. Id. § 6104(e)(2) ("No action. . . shall be brought. . . if administrative remedies have not been exhausted."). In addition, prior to filing an action a plaintiff must provide the Secretary of Health and Human Services, the Attorney General, and the defendant written notice. Id. § 6104(e)(1). Plaintiff has not alleged compliance with these requirements. Accordingly, plaintiff's age discrimination claims are dismissed.

## VI

1    Plaintiff repeatedly alleges that defendants conspired in violation of 42 U.S.C. §
2  1985(3). To prevail on a § 1985(3) conspiracy claim, plaintiff must show "the existence of
3  a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance
4  of the conspiracy; and a resulting injury." Scott v. Ross, 140 F.3d 1275, 1284 (9th Cir.
5  1998). None of plaintiff's conspiracy allegations are sufficient to state a claim.
6    First, plaintiff conclusively alleges that defendants Cordova, Walters, Candeleria,
7  Baker, Davis, and non-party Kapusta violated § 1985(3). Compl. ¶ 47. He also alleges that
8  these defendants, along with Kapusta, "conspired to cover-up their egregious actions and
9  inactions to maintain Federal Financial Assistance." Compl. ¶ 56. Even accepting this
10 statement as true, plaintiff has alleged that the motivation to "cover-up" certain actions was
11 not to deprive plaintiff of equal protection of the laws, but to ensure that UTI continued to
12 receive federal financial assistance. Plaintiff also alleges that his expulsion constituted a §
13 1985(3) violation. But in the same paragraph, he claims that he was expelled "without any
14 reason other than that to inflict as much emotional distress as possible." Compl. ¶ 81. Next,
15 plaintiff alleges that questioning by Riggs and Mourad about recordings plaintiff secretly
16 made of conversations constituted a conspiracy to interfere with his civil rights. Compl. ¶
17 91. Plaintiff does not allege that he was injured by being asked questions. Finally, plaintiff
18 alleges that UTI's repayment of his student loans was "not an act of generosity, but a
19 conspiracy to cover-up the gross overcharge of tuition that UTI does on a daily basis."
20 Compl. ¶ 95. Even if true, the alleged motivation was not to deprive plaintiff of equal
21 protection of the laws. Moreover, plaintiff has not alleged that having his student loans paid
22 off injured him. Plaintiff's § 1985(3) claims are dismissed.

**VII**

24    Plaintiff alleges that Title VI of the Civil Rights Act of 1964 was violated: (1) when
25 UTI maintenance employees would play the Confederate Anthem as they passed certain

- 5 -

1 racial groups,[2] Compl. ¶¶ 17-18; (2) when defendants discriminated on the basis of race by
2 allowing white students to re-take the Induction Systems test and denying him and his son
3 the same opportunity, Compl. ¶¶ 23-32, 36-37, 44-46; (3) when Cordova, Walters,
4 Candeleria, Davis, Gonzales, Baker, and non-party Kapusta covered-up their actions to
5 "maintain Federal Financial Assistance," Compl. ¶ 56; (4) when Romano and Gonzales said
6 to plaintiff "[y]ou've been a good boy for (3) phases," "[i]f you want to graduate, you'd better
7 stay a good boy," "[d]on't mistake my kindness for weakness," and "I know that you are
8 African American" during a meeting on October 4, 2010, Compl. ¶ 61-62; (5) when Walters
9 repeatedly said to plaintiff "I'm trying to understand" while he was demonstrating mechanic
10 techniques to other students, and repeated this to plaintiff when she stopped him in the
11 hallway, Compl. ¶¶ 74-77; (6) when plaintiff was expelled, Compl. ¶ 81; (7) when Riggs
12 asked plaintiff whether he could be mistaken for an African American, Compl. ¶ 87; and (8)
13 when Riggs and Mourad questioned plaintiff about the conversations he secretly recorded.
14 Compl. ¶ 91.

15   Title VI commands that no person "shall, on the ground of race, color, or national
16 origin, be excluded from participation in, be denied the benefits of, or be subjected to
17 discrimination under any program or activity receiving Federal financial assistance." 42
18 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must allege "(1) the entity
19 involved is engaging in racial discrimination; and (2) the entity involved is receiving federal
20 financial assistance." Fobbs v. Holy Cross Health Sys. Corp., 29 F.3d 1439, 1447 (9th Cir.
21 1994), overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d
22 1131 (9th Cir. 2001).

23   Plaintiff sued the named UTI employees "in their official capacity as educators for
24 UTI." Compl. ¶ 5. Suing UTI employees in their official capacity is redundant, as plaintiff
25 has also sued UTI, the entity he alleges receives federal financial assistance. See Kentucky

---

[2] We refer to specific paragraphs as plaintiff's allegations of Title VI violations span his entire complaint.

- 6 -

1  v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985) (noting in the context of a §
2  1983 action that "[o]fficial-capacity suits. . . 'generally represent only another way of
3  pleading an action against an entity of which an officer is an agent'") (citation omitted).
4  Accordingly, we dismiss the Title VI claims against the UTI employees.[3]

Plaintiff has not stated a Title VI claim for all but one of these allegations. Plaintiff does not allege that the UTI maintenance employees played the Confederate Anthem when they saw either him or other members of his race or ethnic group, and thus has not alleged injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent" in order to have standing to sue). He fails to allege race discrimination for a number of allegations. Plaintiff alleges that Cordova, Walters, Candeleria, Davis, Gonzales, Baker, and non-party Kapusta executed a cover-up to maintain UTI's receipt of federal funding. He alleges that Romano and Gonzales' comments were made "in order to get a negative response." Compl. ¶ 61. Although plaintiff claims that Walters' comments in the hallway were designed to harass him, he does not allege that he was harassed on the basis of race. And there is nothing about the statement "I'm trying to understand" from which we can reasonably infer racial discrimination. Similarly, plaintiff alleges that he was expelled "without any reason other than" to incite a negative response. Compl. ¶ 81. And plaintiff has not plausibly alleged that Riggs and Mourad's questioning, or Riggs asking whether plaintiff could be mistaken for an African American, constituted race discrimination.

That leaves the incident surrounding the Induction Systems test. Accepting all well-pleaded facts as true and viewing the complaint in the light most favorable to plaintiff, he has stated a plausible Title VI claim. Plaintiff alleges that UTI receives federal financial assistance. He alleges that Baker, the course instructor, made disparaging comments about Japanese people and knew that plaintiff is from Japan. Plaintiff alleges that Baker did not

---

[3] Defendants argue that only an entity is an appropriate defendant to a Title VI claim. Because plaintiff only sued the UTI employees in their official capacities, we do not address this argument.

- 7 -

1 permit him and his son (who he identifies as the only two "negroid students" in the class) to
2 make-up or retake the test, although white students (including one student who plaintiff
3 alleges left class early that day) were permitted to make-up or retake the test. Compl. ¶ 44.
4 Plaintiff alleges that he received a zero score despite his repeated requests to take the test.
5 These facts plausibly allege race discrimination.

6 In sum, all Title VI claims are dismissed except for plaintiff's claim against UTI that
7 he was discriminated against by not being allowed to make-up or retake the Induction
8 Systems test.

**VIII**

10 Plaintiff alleges violations of a variety of other federal statutes, all of which fail to
11 state a claim. He alleges retaliation in violation of the Americans With Disabilities Act, 42
12 U.S.C. § 12203(a), but fails to allege that he is disabled. See id. § 12102(1). He alleges
13 violations of the Safe Schools Act, which authorizes federal grants to schools to help reduce
14 violence. 20 U.S.C. § 5962. But this Act does not appear to create a private right of action,
15 and plaintiff does not argue otherwise. See TC v. Valley Cent. Sch. Dist., 777 F. Supp. 2d
16 577, 598 (S.D.N.Y. 2011) (dismissing Safe Schools Act claim because Act "does not appear
17 to create any private rights"); Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ., 3
18 Fed. Appx. 25, 34 (4th Cir. 2001) (Safe Schools Act does not give schools notice of a private
19 right of action) (unpublished decision). He also alleges that defendants have conspired to
20 defraud the United States in violation of 18 U.S.C. § 371, but this is a criminal statute
21 without a private right of action. Rockefeller v. U.S. Court of Appeals Office, for the Tenth
22 Circuit Judges, 248 F. Supp. 2d 17, 23 (D.D.C. 2003).

**IX**

24 Finally, we address plaintiff's state law claims for assault, fraud, and intentional
25 infliction of emotional distress ("IIED"). First, plaintiff alleges that students and an
26 instructor at the Houston campus assaulted him. Compl. ¶¶ 12, 14-15. He does not allege
27 that any of the named defendants assaulted him. Accordingly, plaintiff's assault claim is
28 dismissed. Next, plaintiff alleges that defendants committed fraud when UTI paid back his

- 8 -

student loans. In Arizona, to prevail on a fraud claim a plaintiff must show

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury.

Echols v. Beauty Built Homes, Inc., 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982). Plaintiff has not stated a plausible fraud claim. He has not identified any material false representation made by defendants relating to his student loans, his reliance on its truth, a right to rely on it, or a resultant injury. The fraud claim is dismissed.

Plaintiff alleges that his expulsion amounts to IIED. In order for a party to prevail on an IIED claim in Arizona, the conduct complained of must be extreme and outrageous, the defendant "must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result," and the conduct must cause "severe emotional distress." Watts v. Golden Age Nursing Home, 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980). Conduct must be "so extreme in degree," and so beyond boundaries of decency, that it is considered "atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (1965). When considering a motion to dismiss an Arizona IIED claim, we may determine whether the alleged actions rise to this level. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1046 (9th Cir. 2011).

Here, plaintiff claims that he was expelled "without any reason other than to inflict as much emotional distress as possible to get a negative response." Compl. ¶ 81. Assuming this is true, expelling someone from a private post-secondary institution for no reason, although arguably offensive, is not so extreme that it could be considered utterly intolerable. See Corales v. Bennett, 567 F.3d 554, 571-72 (9th Cir. 2009) (vice principal's "stern[] warning" to public school student, delivered the day he committed suicide, that continuing to break school rules could result in three years in jail was not extreme and outrageous conduct). Moreover, plaintiff has not pled that he suffered severe emotional distress. The IIED claim is dismissed.

**X**

- 9 -

Defendants White, Golaszewski, and Davis have not appeared in this action, and it is unclear whether they have been properly served. However, we dismiss this case as to these UTI employees as the legal result would be the same. See Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742-43 (9th Cir. 2008).

## XI

In closing, defendants argue that the complaint should be dismissed in its entirety for failure to satisfy Rule 8, Fed. R. Civ. P. Defendants complain that they cannot adequately respond to plaintiff's allegations, in large part because plaintiff does not indicate who is being sued in each of his causes of action. Our resolution of this motion should clear up much of the confusion. Moving forward, all that remains is one Title VI claim against one defendant.

Accordingly, **IT IS ORDERED GRANTING IN PART** defendants' motion to dismiss (doc. 92). All claims are dismissed except for plaintiff's Title VI claim alleging that UTI engaged in race discrimination by not allowing plaintiff to take the Induction System test in August 2010. This claim only remains against UTI.

We again strongly urge plaintiff to seek the advice of a lawyer. If he does not have one, he may wish to contact the Lawyer Referral Service of the Maricopa County Bar Association at 602-257-4434.

DATED this 8th day of May, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge